```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
ANGEL HERNANDEZ,                         :
                 Petitioner,             :
                                         :   03 CIV. 7614 (DLC)
        -v-                              :
                                         :   OPINION & ORDER
DAVID L. MILLER and the ATTORNEY         :
GENERAL OF NEW YORK STATE,               :
                                         :
                 Respondents.            :
                                         :
-----------------------------------------X
```

Appearances:

For pro se petitioner:
Angel Hernandez
No. 93-A-7366
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338

For respondents:
Nancy D. Killian
Office of the Bronx County District Attorney
198 East 161th Street
Bronx, New York 10451

DENISE COTE, District Judge:

Pro se petitioner Angel Hernandez ("Hernandez") has applied for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction following trial of second degree murder and second degree criminal possession of a weapon. The petitioner alleges that he was denied his due process right to a fair trial when the trial court refused to seek clarification of a particular jury note and gave "an overbroad response to the note which unnecessarily repeated prejudicial testimony."

Hernandez's petition was referred to Magistrate Judge Theodore H. Katz for a Report and Recommendation. On March 31, 2005, Judge Katz issued a Report and Recommendation ("Report").

Following extensions, Hernandez's objections to the Report were received on May 17, 2005. For the reasons stated herein, the Report is adopted, and the petition is denied.

### Background

The relevant facts are set forth in the Report and summarized here. On March 2, 1991, at around 1:00 p.m., Hernandez had an argument with Charles Ashe, Jr. ("Ashe") as the two were standing on the corner of Southern Boulevard and Crotona Park East in the Bronx. This argument was witnessed by three individuals: Linda Copeland ("Copeland"), who knew Hernandez as her brother was a friend of his and who was unloading groceries from a taxicab when she observed Hernandez and Ashe arguing; Orlando Eshezabal ("Eshezabal"), who was standing nearby and knew both men; and Crystal Ramos ("Ramos"), who had known Hernandez for three or four years and was sleeping in her second-floor apartment when she was awoken by the argument, which she then observed from her living room windows.

During their argument, Hernandez called Ashe a "pussy," to which Ashe replied, "Fuck you" and demanded of Hernandez, "What are you going to do?" At that point, Hernandez stepped back, reached in the waist band of his pants, and drew a gun. Holding his hands above his head, Ashe backed up against a building. Hernandez then shot Ashe from a distance of eight to ten feet away. At Eshezabal's direction, Ashe ran toward the entrance of 1816 Crotona Park East.

After hearing the first shot, Copeland ran up the first three steps of 1816 Crotona Park East, where from she "peeked out to see Ashe running toward the building, and heard more shots." At around the same time, Eshezabal, who had run around the corner, heard two more shots and subsequently saw Hernandez fire two additional shots at Ashe. Eshezabal went to call the police, during which he heard yet another shot, while Copeland ran inside 1816 Crotona Park East, where she saw Ashe "enter and go up approximately six steps, before falling backward." Eshezabal subsequently found Ashe "laying in front of the steps."[1]

At approximately 2:15 p.m., Hernandez arrived at the apartment of his then-girlfriend, Karan Culbreath ("Culbreath"), a police officer, and asked her if a person could be charged with murder if there were witnesses but no weapon. Hernandez admitted to Culbreath that he had killed someone and asked for her assistance in disposing of his gun, a .357 magnum Smith and Wesson revolver. Hernandez undressed and placed his clothes in a garbage bag and then wrapped his gun in a white towel. After placing both the towel and the garbage bag in a duffel bag, he instructed Culbreath to dump the duffel bag in a river or lake. Hernandez requested that after she disposed of the duffel bag, Culbreath return to the apartment to drive him to the airport so that he could escape to Puerto Rico. Instead of following

---

[1] From her apartment, Ramos saw Hernandez fire his gun "straight ahead, then at an angle" toward the entrance to 1816 Crotona Park East and saw him fire four or five shorts before fleeing into the park. She did not see Ashe after Hernandez fired for the first time.

3

Hernandez's instructions, however, Culbreath went to the home of her father, a detective with the transit police, and together, they went to the 71st Precinct.

Hernandez's gun was examined by two N.Y.P.D. detectives, Kevin Barry, an expert in firearms identification and operability, and Anthony Tota, who specializes in ballistics and microscopic analysis of ballistics materials. Detective Barry found the gun to be operable and determined that there had been discharge from all six chambers. Using the bullet and bullet fragments recovered from the crime scene, Detective Tota concluded that Hernandez's gun had fired the recovered fragments.

Trial Proceedings

On the second day of jury deliberations, the jurors sent a note to the trial court, which requested, inter alia, a "[r]e-reading of [Copeland's] testimony of what she heard of the argument when she got out of the cab -> to when she reached the three steps." Arguing that the note did not mention what Copeland saw, but merely referred to what she heard, Hernandez's counsel first requested that the trial court restrict its readback to what Copeland testified she heard. The trial court rejected this request, noting that "[p]art of the argument, if in fact the allegations of the witness are to be believed," is that "she also saw the individual she identified as your client take out a gun and fire the gun into somebody." The trial court continued:

> When somebody takes out a gun and shoots somebody else, that's part of an argument, I believe. It's part and parcel of the discussion. I mean, that's what they are concerned with here. They want to know what she heard of the argument when she got out of the cab, and then there is an arrow to when she reached the three steps. They are looking for her testimony on the matter. What rational reason would the Jury be only concerned with the words but not the whole scene?

The trial court then observed that "in the absence of absolute clarity," it was preferable to "include rather than exclude portions of the read back." As a result, the trial court ruled that it would "locate on direct and cross that portion of this woman's testimony which starts at the point where she arrives in the cab and the argument ensues to the point where she reaches the three steps and thereupon retreats into the apartment building and no longer hears the argument."

Hernandez's counsel then asked the trial court to consider "asking the Jury in light of the defense objection to clarify what they mean by argument." The trial court replied that it would "not seek any further clarification" and noted that "[i]f something is in the record, it is no great sin in [the jury] hearing it." Acknowledging that Hernandez's counsel had preserved an exception to the read-back, the trial court then instructed counsel for Hernandez and the state's counsel to discuss which pages could be read back to the jury and further concluded that the jurors were entitled to rehear closing arguments. At this point, Hernandez's counsel requested that the record reflect his exception to the court's ruling both as to "not clarifying the note and now allowing the summations of both sides." It is not clear from the record which portions of

5

Copeland's testimony were read back to the jury. Instead, the trial record simply reflects that the court reporter read back what was requested.

The jury having found Hernandez guilty of second degree murder and second degree criminal possession of a weapon, on September 9, 1999, he was sentenced to concurrent terms of imprisonment of twenty-five years to life and five to fifteen years.

Post-Trial Proceedings

Hernandez directly appealed his conviction of the Appellate Division, arguing that the trial court deprived him of his due process right to a fair trial in refusing to seek clarification of the jury note and in giving the jury an overbroad reponse to the note that "unnecessarily repeated prejudicial testimony that had not been requested by the jury."[2] On March 21, 2002, the First Department affirmed Hernandez's conviction, finding that Hernandez's due process claim was "unreviewable" since "the record does not reveal what testimony was read to the jury" and therefore prevents a determination of whether "the readback exceeded the jury's request." People v. Hernandez, 738 N.Y.S.2d 852 (App. Div. 2002). The First Department further concluded that "[t]o the extent that [Hernandez's] arguments are

---

[2] Hernandez also appealed his conviction on the ground that his sentence was excessive, but since he did not raise an excessive sentence claim in his habeas petition, it is unnecessary to discuss this claim here.

reviewable," the court "reasonably interpreted the note," alleviating the need for clarification, and that even if the readback exceeded the scope of the jury note, no prejudice had resulted. Id.

The New York Court of Appeals denied Hernandez leave to appeal on August 21, 2002, see People v. Hernandez, 98 N.Y.2d 710 (2002), and he did not petition to the United States Supreme Court for certiorari. Hernandez filed the instant petition on August 27, 2003.

## Discussion

The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a de novo determination of the portions of the report to which petitioner objects. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). "A district court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Wilds v. United Parcel Serv., Inc., 262 F.Supp.2d 163, 170 (S.D.N.Y. 2003)(citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, requires that a habeas corpus petition adjudicated on the merits in state court must be denied unless the state court's adjudication

> (1) resulted in a decision that was <u>contrary to, or involved an unreasonable application of, clearly established Federal law</u>, as determined by the Supreme Court of the United States; or

7

> (2) resulted in a decision <u>based on an unreasonable determination of the facts</u> in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(emphasis supplied). AEDPA further mandates that a state court's determination of a factual issue shall be presumed correct and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In his May 17, 2005 objections, Hernandez objects to the Report's observations of fact in two areas: the description of the events of March 2, 1991 based on Eshezabal and Copeland's testimony and the discussion of the N.Y.P.D.'s examination of the crime scene and its subsequent testing of his gun.[3] Hernandez's only claim in his habeas petition asserts that his due process rights were violated by the trial court's failure to seek clarification of the jury's note and its providing a more expansive response to the jury's request to rehear Copeland's testimony than was necessary. The factual descriptions to which Hernandez objects did not play any role in the Report's legal

---

[3] Hernandez objects to the Report's conclusion that he shot Ashe from a distance of eight to ten feet on the ground that Eshezabal, who has a criminal history and had been charged with murder, testified that the assistant district attorney who prosecuted Hernandez's case offered to write a letter to the judge overseeing Eshezabal's homicide case and eventually wrote to the state parole board on Eshezabal's behalf. Hernandez also argues that this fact is unsupported because Copeland testified on cross-examination that she could not have seen outside the building if she had been standing beside the radiator and conceded at trial that she may have told the grand jury that when she ran inside the building, she stood next to the radiator. With respect to the Report's discussion of the N.Y.P.D.'s forensic work, Hernandez offers no explanation as to why these facts are objectionable.

8

analysis of this claim nor in its recommendation to deny Hernandez's petition but were merely furnished as background. As a result, the objections to the Report's description of the trial evidence need not be discussed further.

Hernandez also objects to the Report on the ground that it adopts the State's position entirely and does "not discuss the merits of [his] claim." Although the State insisted that Hernandez's claim should be procedurally barred on the basis of the Appellate Division's finding that the claim was "unreviewable because the record does not reveal what testimony was read to the jury," the Report determined that "at least some aspect of the claim is not procedurally barred" and then devoted several pages to analyzing Hernandez's claim on the merits, which it "easily addressed." Given this, Hernandez's objection cannot be sustained.

Because of his assertion that the Report failed to reach the merits of his claim, Hernandez does not appear to object to the Report's merits-based analysis. Yet construing Hernandez's objections liberally to challenge this aspect of Report's recommendation, and therefore to warrant de novo review, the Report's conclusion that Hernandez's petition should be denied is correct and should be adopted. In determining that the trial court not only "meaningfully responded to the jury's note" but also "reasonably interpreted" it such that no clarification was necessary, the Appellate Division did not engage in an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.

§ 2254(d)(1). Rather, as the Report observed, there is no clearly established Supreme Court precedent governing either a trial court's interpretation of jury notes or a trial court's decision to read back testimony to a jury. Indeed, if such Supreme Court precedent existed, the Second Circuit would not be able to hold, as it repeatedly has, that a trial court has "broad discretion" to allow read-backs of testimony in response to jury requests during deliberations. United States v. Salameh, 152 F.3d 88, 133 (2d Cir. 1998); see also United States v. Arboleda, 20 F.3d 58, 61 (2d Cir. 1994) ("[W]hether requested testimony should or should not be read back to a jury during its deliberations is a matter confided to a trial court's broad discretion in the conduct of a trial before it.").

The Appellate Division's related conclusion that Hernandez was not prejudiced by the re-reading of Copeland's testimony, even assuming that the trial court provided more testimony than the jurors requested, similarly cannot be said to constitute an unreasonable application of clearly established Federal law. Given that the Appellate Division had previously concluded that the trial court's interpretation of the jury's note was reasonable, and given that the jurors had already heard Copeland's testimony along with substantial other evidence of Hernandez's guilt, the Appellate Division's conclusion that the re-reading of Copeland's testimony did not prejudice Hernandez cannot be said to be unreasonable. For all of the reasons stated above, the Report correctly concludes that Hernandez's petition should be denied.

Conclusion

The Report is adopted and the petition for a writ of habeas corpus is denied. In addition, I decline to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998). I also find pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition.

SO ORDERED:

Dated: New York, New York
August 29, 2005

_____
DENISE COTE
United States District Judge

11